NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## CATHERINE BORHOFEN, PETITIONER, v. PUBLIC SERVICE RAILWAY COMPANY, RESPONDENT.

For the petitioner, *Alexander Simpson.*

For the respondent, *Henry J. Sorenson.*

\* \* \* \* \* \* \*

On October 26th, 1926, Catherine Borhofen was the legal wife of John Borhofen and their residence was at 160 Huber street, Secaucus, New Jersey; that at that time, John Borhofen was regularly employed by the respondent as a day fireman in the boiler room of the Union City shops. The said shops are located in Union City and run from Twenty-seventh street to Twenty-eighth street and from Bergenline avenue to Palisade avenue, taking in an entire block. On October 26th, 1926, the decedent left his home in Secaucus for the said Union City shops at six-fifteen in the morning. At the time he left, he carried with him a lunch box and a pass, which entitled him to free transportation to his work; that at the time he left his home that morning he was in good physical health and the petitioner expected him home from his work at six-thirty or six-forty in the evening, which time was the usual time for his home-coming. The decedent did not return to his home that evening, and the petitioner did not see him until the following morning, at which time he was a patient in the North Hudson Hospital, where he died on October 28th, 1926, two days after the alleged accident.

Mr. Strohmeier was called by the petitioner and he testified that he, Strohmeier, was the general foreman of the Union City shops and that John Borhofen was a low-pressure fireman, assigned to the day shift. The hours for the day shift were from six in the morning until six in the evening and the working week consisted of seven days. He further testified that Borhofen did not do any overtime work, nor had he been assigned to do any overtime work on October 26th, 1926. Continuing on in his testimony, he stated that it was one of his duties to check the time of the men who worked under him, and that on October 26th, 1926, Borhofen ceased work at six o'clock and had the clock punched "out" at that time.

The next witness called by the petitioner was Joseph McCoy, an operator of a public service trolley car, who, on October 26th, 1926, was operating a Summit line car in Union City. He testified that on the evening of October 26th, 1926, he had brought his trolley car to a dead stop at Summit avenue and Thirty-second street, Union City, New Jersey, and while at a dead stop, a police officer escorted the decedent to the front steps and front platform of the trolley car. This officer helped the decedent to board the trolley. He not only escorted him to the front steps and the platform of the car, but also entered the car with the man and helped him to a seat, which was on the right-hand side of the trolley car.

After having escorted the man to his seat, the police officer left the car, but before leaving informed the operator that the decedent wanted to get off at the transfer station, which is at Sixth street and Paterson Plank road, Union City, New Jersey. The operator testified that on the way down to the transfer station the decedent was sitting in a slouched position, resting his head in his hands, and his elbows on his knees. When the trolley car reached the transfer station, some pasengers left the trolley and the operator turned to the decedent, to inform him that he was at his stop. The decedent then got up and staggered to the platform, mumbling inquiries as to where to get the Passaic car. Suddenly, the decedent reeled off the platform and as he was falling from

the platform to the street, twisted completely around so that he fell on his back and his head. At this time, the trolley car was still at a dead stop. From the time when this decedent was placed on the trolley car by the police officer until the time he left the car there had been no coupon or fare of any character paid to the operator, and the practice of the payment of fare on that line was to "pay as you enter." The operator immediately left the trolley car to render whatever aid he could to the man, who now seemed to be unconscious. He called an officer, who immediately summoned the ambulance and the man was then taken to the North Hudson Hospital. The operator further testified that at the time the man was reeling off the front platform, the man's lunch box was thrown into the street, and on striking the pavement, was forced open and the contents thrown out, among which was a pass which appeared to have been given by the Public Service Railway Company. The operator, on seeing this, endeavored to identify the man, but the ticket being soiled, he was unable to make the identification. This was the first time that the operator knew that the decedent was an employe of the respondent.

Operator McCoy, when asked whether or not the man was drunk or sober, testified that the man was drunk and his testimony was based upon the fact that the man was placed upon the trolley car in a helpless condition, and from the odors which were emanating from this man as he was put upon the trolley car and further from the conduct of the man while he was on the trolley car and from his general appearance.

Officer Frosch, who was connected with the Union City police force on the date of this occurrence, was called by the petitioner and he testified that he was called upon the scene of this occurrence after it had happened; that he found this man lying in the street with no wounds upon the man's head, nor was there any bleeding of any character; that it was about nine o'clock in the evening when he was called and the time when the decedent reached the hospital was approximately ten minutes after nine. This latter time he was certain of, because when he reached the hospital he took out his watch and noted the time.

The respondent, in proof of it's contention that the proximate cause of the man's accident and injuries was intoxication, produced Officer Theodore Haberman, Jr., who is connected with the Union City police force. Officer Haberman was the man who had helped the decedent to board the trolley car. He testified that at about eight-twenty in the evening on October 26h, 1926, while he was on his post, he observed two men who appeared to be staggering and reeling against a large plate glass window which was located in a store between Thirty-first and Thirty-second streets. Fearing that these two men, on account of their condition, might lean too heavily against this window and thereby break it, walked over to them and made inquiries as to where they were going. At the time, he observed that one was a comparatively short man and the other somewhat taller. The taller man was staggering and speechless. He had his hat pulled down over his eyes and he was dressed in a dark suit, which appeared to be his working clothes. Of the two men, the taller one was the more helpless, and therefore the police officer learned from the shorter man that the other's destination was Secaucus. Upon securing this information, the officer then took the taller man by the arm and walked him from the middle of Thirty-first and Thirty-second streets to the corner of Thirty-second street and Summit avenue. The short man departed and walked in the general direction of Thirty-first street. The officer and the taller man, who was later identified as the decedent in this case, remained on that corner for approximately ten minutes, during which time the officer aided and helped the decedent to remain upon his feet.

At the approach of the car, he escorted the decedent cate-cornered across the intersection, and while the trolley car was at a stop, aided the man to board the car. In getting on the car, the officer testified that Borhofen first grabbed hold of the two iron bars which were at the side of the door and then placed his feet upon the step and the officer pushed him upon the step and upon the platform. Then the officer also boarded and took hold of the man's arm and escorted him to his seat. As the man was being seated the officer

noticed, while the man's face was upturned, that his eyes were half closed and sleepy.

The officer, when asked the question whether or not, in his opinion, the man was drunk or sober, answered that the man was drunk. His opinion, as to the man's condition, was based upon the fact that he found him in a helpless condition on Summit avenue, and upon the fact that because of this condition he had to be aided to the trolley car and then up on the car, and finally escorted into his seat. He further drew his opinion from the general appearance of the man and from the odors which were emanating from his person.

.. The respondent further produced Anthony Bonamico, who stated that he boarded a Summit avenue car on the evening in question at Twenty-first street and Summit avenue, at approximately nine o'clock in the evening. As he walked back to a seat which he had selected, the decedent, who had been resting his head in his hands and his elbows upon his knees, lurched a little forward and rubbed against his leg. He then continued on until he reached the seat which he had selected, which was a little further back in the car and on the opposite side from that which the decedent was seated. He testified that the man wore a dark suit, which appeared to be his working clothes, and from the slouched-down posture of the decedent and from his general appearance and the mutterings and groans which he was uttering, he was of the opinion that the man was drunk. Continuing his testimony, he stated that when the trolley car stopped at the transfer station, which is on Paterson Plank road and Sixth avenue, Union City, New Jersey, he noticed the trolley make a dead stop. While it was at this stop the decedent left his seat and walked out on the platform. Immediately thereafter, he next saw the decedent lying out in the street and also noticed an officer, who was attempting to aid the man. He further testified that from the time the man left his seat until he saw him out in the street, the trolley car was at a dead stop.

From the testimony of the disinterested witnesses, one of which was a police officer and the other a passenger on the

trolley car, and from the admission of the petitioner's own witness, McCoy, I find that the facts clearly show that the proximate and sole cause of the man's accident was intoxication, and I further find that the respondent has fully met the burden which is cast upon it to prove that this condition was the cause of the man's accident.

<div align="right">

CHARLES E. CORBIN,
*Deputy Commissioner.*